UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORTHWEST HAMILTON LAKE ) | |
| DEVELOPMENT CO., L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV487SNL |
| ) | |
| AMERICAN FEDERAL, INC., ET. AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff has filed this multicount action involving a failed real estate development.[1] This matter is before the Court on defendant AmBanc's motion for summary judgment or, in the alternative, motion for partial summary judgment on the damages (#40), filed July 1, 2005. Following several extensions of time, and the filing of several motions to strike in connection with the instant motion[2], responsive pleadings were all filed and the instant motion is now ripe for disposition. This cause of action is set for jury trial on February 21, 2006.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

---

[1]Plaintiff's amended complaint states six (6) causes of action: Count I - Breach of Contract; Count II - Constructive Fraud; Count III - Promissory Estoppel; Count IV - Negligent Misrepresentation; Count V - Conversion; and Count VI - Fraud. There are two (2) claims common to these causes of actions: Firstly, that plaintiff satisfied all conditions as required by the Conditional Commitment; and secondly, that defendant American Federal (hereinafter referred to as AmBanc) misrepresented that financing necessary for the subject real estate development would occur by various alleged closing dates.

[2]The motions to strike were disposed of in early January 2006. See, Court Orders #69, #70 and #71, filed January 9, 2006.

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although the Court is required to view the facts in the light most favorable to the non-moving party, it should not accept "unreasonable inferences or sheer speculation as fact.". Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 800 (8th Cir. 2004). A plaintiff may not "simply point to allegations made in [her] complaint but must identify and provide evidence of `specific facts creating a triable controversy." Howard, at 800 *quoting* Jaurequi v. Carter Manufacturing Co., 173 F.3d. 1076, 1085 (8th Cir. 1999). Furthermore, a plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort to find support for the plaintiff's allegations. Howard, at 800-01 (citations omitted). The Court is only obligated to consider "admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions in fact.". Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir. 2003).

2

As a result of the Court's rulings on the earlier motions to strike, the facts are largely undisputed.[3] On or about November 7, 2002, plaintiff retained Commercial Bancorp, L.L.C. (CBC) to act as its agent to negotiate and to obtain debt financing for plaintiff's Crystal Cove and Crystal Bay residential real estate developments located in Hamilton Lake, Steuben County, Indiana (hereinafter referred to as simply "the Project"). Defendant's Exhibit 1 - Affidavit of Steven Mooney; Mooney Affidavit - Exhibit B. CBC informed the plaintiff that, subject to certain parameters, CBC had a development-funding program available to plaintiff for the Project. CBC also informed the plaintiff, and plaintiff acknowledged in writing, that the development-funding program process would commence by first obtaining a Conditional Commitment from a lender and/or its designee, affiliates, associates, advisors, or investors. Mooney Affidavit - Exhibit C (Letter of Interest dated October 23, 2002 and executed by plaintiff on November 7, 2002); Defendant's Exhibit 2 - Deposition of Kent Miller, pgs. 38-39. As plaintiff's agent, CBC informed plaintiff, and plaintiff acknowledged in writing, that a Conditional Commitment is a "best-efforts agreement", and CBC specifically informed plaintiff as to the standard terms, provisions, and conditions of such an agreement. Mooney Affidavit - Exhibit C. CBC further informed plaintiff, and plaintiff acknowledged in writing, that a Conditional Commitment is based upon preliminary information and documentation and is distinguished from a binding Commitment letter expressing an obligation to fund a loan request. Mooney Affidavit - Exhibit C; Miller Deposition, pgs. 44-45.

In particular, CBC informed plaintiff, which plaintiff acknowledged in writing, that a Conditional Commitment is subject to the following conditions: 1) plaintiff's delivery of all requested information and data requested by and satisfactory to the lender in the lender's sole and absolute discretion; 2) the truth and veracity of all plaintiff's representations; 3) complete satisfaction of all underwriting requirements, compliance requirements and committee approvals,

---

[3]These undisputed facts are gleaned from the parties' statements of undisputed facts pursuant to the Court's rulings on the motions to strike; certain affidavits which have survived the Court's rulings on the motions to strike, as well as other exhibits which have survived the Court's rulings on the motions to strike. The Court will cite to specific testimony by affidavit or depositions, as well as exhibits, when necessary.

the performance and satisfaction of which shall be determined by the lender in the lender's sole and absolute discretion; 4) the adequacy of the collateral and viability of the Project in the lender's sole and absolute discretion; 5) final approval of all documents, third-party reports and other information, including but not limited to, an acceptable appraisal; and 6) market conditions and completion of due diligence. Mooney Affidavit - Exhibit C. As plaintiff's agent, CBC further informed plaintiff, which plaintiff acknowledged in writing, that a lender would require a non-refundable Commitment fee should plaintiff terminate the Conditional Commitment prior to the expiration of its term or upon discovery of falsified, incorrect, or misleading information. Mooney Affidavit - Exhibit C. CBC also informed plaintiff, which plaintiff acknowledged in writing, that plaintiff would represent and warrant the truth of all information contained in all data, documents and instruments provided by plaintiff. Mooney Affidavit - Exhibit C. CBC further informed plaintiff, which plaintiff acknowledged in writing, that plaintiff would have to notify the chosen lender, in writing, of any information that would affect the quality, nature or risk of the loan or any information which plaintiff had reason to believe was inaccurate, fraudulent, or incomplete; that any lender may assign its rights or request that one or more banks or other financial institutions participate in the loan transaction; that a conditional Commitment is not a guarantee that plaintiff shall be eligible for financing; and finally, that the loan program parameters, terms, conditions, loan process, loan processing, timelines and additional requirements are not exhaustive and are subject to change and should not be construed as a binding agreement, nor intent and/or a Commitment by CBC or its lender to make the loan and that the making of a loan would be subject to whether the lender is willing and able, at its sole discretion, to commit to funding. Mooney Affidavit - Exhibit C.

Plaintiff was anxious to close the financing by December 15, 2002; however, it was understood by plaintiff and CBC that it could take as long as ninety (90) days for CBC to procure financing, and the possibility existed that CBC would not be able to procure financing at all; CBC was able to facilitate the issuance of a Conditional Commitment from defendant AmBanc which the plaintiff executed on November 18, 2002. Mooney Affidavit - Exhibit D; Miller Deposition, pg. 64. The AmBanc Conditional Commitment is a best-efforts agreement and contains the

4

standard terms, provisions and conditions of a best-efforts agreement as set forth in CBC's Letter of Interest. Mooney Affidavit - Exhibits C and D. It is CBC's usual practice to incorporate the terms of the best-efforts agreement in its Letter of Interest in order to avoid any misunderstandings or to clarify any concerns the borrower may have about the loan process. Mooney Affidavit - Exhibit A.

As plaintiff's agent, CBC worked closely with plaintiff and defendant AmBanc and either participated in communications between the parties, or was duly informed of all communications between the parties. Mooney Affidavit; Miller Deposition, pg. 123. CBC was aware that if the Project qualified for financing, defendant AmBanc would not directly fund the loan but instead would underwrite and process the loan and use its best efforts to secure financing by syndicating the loan through other lines, investors, and institutions. Financing through syndication is a common practice in the industry. Mooney Affidavit.

As part of its loan facilitation process, CBC sent plaintiff a Loan Summary Questionnaire for completion. The purpose of the Questionnaire was to gather background information on plaintiff and to gather initial information regarding plaintiff's loan request. Mooney Affidavit - Exhibit E. The Questionnaire was completed by Kent Miller, a principal of plaintiff, on or about October 15, 2002 and returned to CBC. Plaintiff's Exhibit 1 - Affidavit of Kent Miller; Plaintiff's Exhibit 2 - Affidavit of Joseph Montel.

Upon executing the Conditional Commitment, plaintiff ceased all other efforts to obtain the necessary financing for the Project that it would have explored had the Conditional Commitment not been executed. Plaintiff's Exhibit 2 - Affidavit of Joseph Montel. Plaintiff continued to stress to CBC its desire to close the financing by the end of 2002. Plaintiff's Exhibit G.

The financing was not completed by the end of December 2002. Several discussions ensued among plaintiff, CBC, and defendant as to possible closing dates in January 2003, February 2003, and March 2003. On January 21, 2003 CBC wrote defendant raising issues for discussion, including a possible "soft closing date" once due diligence had been completed. Mooney Affidavit - Exhibit P. Meanwhile, an appraisal of the Project was done and forwarded to

defendant. However, defendant was concerned because certain oral "negative comments" made by appraiser to the defendant had not been incorporated into the appraisal report forwarded by plaintiff. Mooney Affidavit - Exhibits G and J. Accurate property appraisals for projects such as Crystal Bay/Crystal Cove are crucial in determining the viability of funding as the appraisal reflects the potential absorption rate of lots on the property and such property often serves as collateral for the loan. Mooney Affidavit; Miller Deposition, pgs. 185, 187. Plaintiff never informed defendant of the inconsistencies in the appraisal report. Miller Deposition, pgs. 117, 143, 184-85, 188.

On February 27, 2003 plaintiff terminated its business relationship with the defendant. At the time of the termination, defendant believed that several matters impacting the successful financing of the Project still existed and required resolution:

    1) the poor market for secondary residential homes sales;

    2) final plat approval of Phase II of the Project;

    3) the accuracy of the appraisal; and

    4) the parties' ability to develop a viable exit strategy involving binding, arms-length pre-sales of residential home lots.

These issues were brought to the plaintiff's attention. Mooney Affidavit - Exhibit G. Although plaintiff was aware of these pending issues, it ignored them and continued to press for a closing date. Miller Deposition, pgs. 122, 137-40, 193.

At the time of plaintiff's termination of its business relationship with defendant, no written documents existed indicating a closing date, or any confirmation that plaintiff had satisfied all conditions necessary to have a binding loan Commitment from defendant.

## Breach of Contract

It is important to note that plaintiff's breach of contract is **not** that defendant failed to use its best efforts but rather that plaintiff, by completing the Loan Summary Questionnaire for CBC, turned the Conditional Commitment into a binding contract which defendant breached when it failed to close.

6

In breach of contract actions, under Missouri law, a plaintiff must show: 1) the existence of an enforceable contract between the parties to the action; 2) that mutual obligations had arisen under its terms; 3) that the party being sued had not performed obligations imposed by the contract; and 4) that the party seeking recovery was damaged as a result. Moore v. Firstar Bank, 96 S.W.3d. 898, 902 (Mo.App. 2003) *citing* Superior Ins. Co. v. Universal Underwriters Ins. Co., 62 S.W.3d.110, 118 (Mo.App. 2001).

The undisputed facts show that the Conditional Commitment never became a "binding contract". On October 23, 2002 CBC sent plaintiff a "letter of interest" wherein it expressed its interest in procuring financing from a lender for the Project. In this letter, CBC clearly states to plaintiff that "upon favorable determination of **preliminary** information documentation" (emphasis added), the lender would issue a "Conditional Commitment" subject to the terms and conditions as set forth in the Commitment, and which satisfaction of same is at sole discretion of the lender. The letter goes on to (again) clearly state that plaintiff is to pay a commission to the lender, and that this commission "will be fully earned by Lender upon the issuance of a **binding Commitment letter** (emphasis added) (**Closing Instrument**") expressing Lender's obligation to fund the loan transaction ("**Transaction**")." On November 18, 2002 plaintiff and defendant executed an instrument clearly titled **Conditional Commitment** in which it states a second time that plaintiff is to pay a commission to defendant (Lender) and that this commission "will be fully earned by Lender upon the issuance by Lender of a **binding Commitment letter** (emphasis added) ("**Closing Instrument**") expressing Lender's obligation to fund the loan transaction described herein (**"Transaction"**)".

It is undisputed that no "Closing Instrument" was ever issued by defendant in connection with the financing of the Project. Plaintiff contends that by providing information to CBC via its Loan Summary Questionnaire, it somehow turned the Conditional Commitment into a binding contract. Mooney, plaintiff's agent, has unequivocally testified that the Loan Summary Questionnaire had nothing to do with the Conditional Commitment; that its sole purpose was to gather preliminary information about plaintiff's loan request. Furthermore, plaintiff completed the questionnaire long before it ever executed the Conditional Commitment. There is nothing in the

7

Conditional Commitment which even hints that completion of a questionnaire for a third-party transformed the Conditional Commitment into a binding contract.

In fact, the Conditional Commitment clearly states the following as to closing:

> "**Lender will require approximately 5 business days after complete satisfaction of all above conditions in order to close the Transaction.** For purposes of this Commitment, a `business day' is any day Monday through Friday, excluding Federal holidays. Subject to the above, Closing shall occur as quickly as reasonably possible after the complete satisfaction of all conditions described in this Paragraph, the exact date, time and place of the Closing to be determined by Lender."

Mooney Affidavit - Exhibit D, ¶3.

The Conditional Commitment is exactly what it says it is - a Commitment to secure financing conditional upon certain obligations being fulfilled by the plaintiff to the defendant's satisfaction. Assuming that plaintiff fulfills all of these obligations to the defendant's satisfaction, then a binding agreement aka the "Closing Instrument" would be issued at the Closing. Plaintiff has presented no facts that it had fulfilled all of the conditions as set forth in the Conditional Commitment to the defendant's satisfaction and/or that defendant ever issued a "Closing Instrument".

On the contrary, the undisputed facts are that plaintiff did not fulfill all the conditions as set forth in the Conditional Commitment; especially as regards the appraisal. Plaintiff has failed to show that material facts remain in dispute as to the failure of the parties to enter into a binding contractual relationship prior to plaintiff's termination of their business relationship.

**Fraudulent Misrepresentation**

Under Missouri law, the elements of an action for fraudulent misrepresentation are: 1) a false, material misrepresentation; 2) the speaker's knowledge of its falsity or his ignorance of its truth; 3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; 4) the hearer's ignorance of the falsity of the statement; 5) the hearer's reliance on its truth; 6) the hearer's right to rely thereon; and 7) the hearer's consequent and proximately caused injury. <u>Moses.com Securities v. Comprehensive Software Systems, Inc.</u>, 406 F.3d. 1052, 1064 (8th Cir. 2005); <u>Clearly Canadian Beverage Corp. v. American Winery, Inc.</u>, 257 F.3d. 880,

890-91 (8th Cir. 2001); Reding v. Goldman Sachs & Co., 382 F.Supp.2d. 1112, 1117 (E.D.Mo. 2005); Dueker v. Gill, 175 S.W.3d. 662, 667 (Mo.App. 2005); Evergreen National Corp. v. Carr, 129 S.W.3d. 492, 496 (Mo.App. 2004); Droz v. Trump, 965 F.2d. 436, 441 (Mo.App. 1998). Failure to establish any one of the elements is fatal to a claim for fraud. Moses.com, at 1064; Clearly Canadian, at 891; Reding, at 1117-18; Dueker, at 667. When fraudulent misrepresentations are alleged, a party may either seek to affirm the contract and sue for damages or disaffirm the contract and sue for rescission. Evergreen National Corp., at 496 *citing* Cottonhill Inv. v. Boatmen's National Bank, 887 S.W.2d. 742, 744 (Mo.App. 1994). If a party chooses to affirm the contract and sue for damages, s/he must prove "actual fraud"; i.e., must prove "the speaker's knowledge of its falsity" as required by the second element (as listed above) of a fraudulent misrepresentation case. Evergreen National Corp., at 496.

Furthermore, in a fraudulent misrepresentation case based upon a statement of present intent, it is critical that the plaintiff provides proof that the speaker, when making the alleged fraudulent misrepresentation, did not intend to perform consistently with his/her words. Paul v. Farmland Industries, 37 F.3d. 1274, 1277 (8th Cir. 1994); Jacobs Mfg. v. Sam Brown Co., 19 F.3d. 1259, 1263-64 (8th Cir. 1994); Craft v. Metromedia, 766 F.2d. 1205, 1219 (8th Cir 1985); Paglin v. Saztec International, 834 F.Supp. 1184, 1193 (W.D.Mo. 1993); Carlund Corp. v. Crown Center Redevelopment Corp., 910 S.W.2d. 273, 279-80; Sanders v. Ins. Co. of North America, 904 S.W.2d. 395, 396 (Mo.App. 1995). Without such proof of inconsistent intent, there exists only a possible breach of promise or failure to perform. Paul v. Farmland Industries, at 1277; Craft v. Metromedia, at 1219. Direct evidence is not required to establish such fraud; thus, fraud may be inferred from facts and circumstances. However, intent not to perform cannot be established solely on the basis of nonperformance (by the speaker). Paul v. Farmland Industries, at 1277; Jacobs Mfg., at 1263; Craft v. Metromedia, at 1219; Carlund, at 279; Sanders, at 396; Titan Constr. v. Mark Twain Bank, 887 S.W.2d. 454, 459 (Mo.App. 1994). Whether such circumstantial evidence is adequate to establish such fraud is normally a question for a jury. Paul v. Farmland Industries, at 1277; Jacobs, at 1263; Paglin, at 1193-94; *but see*, Kenley v. J.E. Jones Const., 870 S.W.2d. 494 (Mo.App. 1994)(summary judgment granted to

9

defendants due to lack of plaintiffs' evidence supporting their contention that defendants did not intend to build a clubhouse a certain distance from plaintiffs' residence at the time defendants represented that they would do so).

Plaintiff contends that defendant consistently misrepresented several closing dates because it never intended to close the deal; and that summary judgment should be denied because defendant failed to show that it did intend to perform under the Conditional Commitment (plaintiff goes so far as to argue that the lack of an affidavit by defendant stating that it had good intentions conclusively shows that summary judgment should be denied). Plaintiff is clearly mistaken in its burden of proof; i.e., it is plaintiff's burden to show that defendant did not intend to perform under the Conditional Commitment **not** defendant's burden to show that it did intend to perform under the Conditional Commitment.

Firstly, plaintiff contends that defendant misrepresented a closing date of "the end of December". However, the undisputed fact is that defendant did not receive the appraisal of the Project until six (6) days prior to Christmas. Furthermore, it is undisputed that there were significant problems with the appraisal of which defendant informed the plaintiff. Plaintiff has produced no evidence that the defendant stated it would close by the end of December knowing that problems existed with the appraisal. Finally, Miller (plaintiff's president) testified that he didn't even discuss closing dates with defendant until mid-January 2003. Plaintiff next claims that defendant misrepresented closing dates in January and February 2003; however, on January 21, 2003 CBC (plaintiff's agent) sent defendant a letter acknowledging that a "soft closing date" could not be discussed until defendant had completed its due diligence. Next, plaintiff contends that defendant misrepresented a closing date in mid-to-late February 2003; however, Miller testified that he was told at that time that defendant had not yet secured the funds to close. Finally, plaintiff contends that defendant misrepresented a closing date in early-to-mid March 2003; however, plaintiff terminated the business relationship on or about February 27, 2003.

Plaintiff's only evidence is that closing dates were discussed and although plaintiff may have wanted the deal closed by a date certain, issues existed which were never fully addressed which negatively impacted upon defendant's ability to close the financing. Plaintiff has offered no

10

evidence which disputes its own agent's testimony that any discussions regarding closing dates were "mere projections, expectations, or opinions." Plaintiff has not offered any evidence from which a jury could reasonably find that defendant's "representations" regarding possible closing dates were false at the time they were made.

Plaintiff next contends that summary judgment should be denied because it relied upon these alleged misrepresentations regarding closing dates. However, the undisputed evidence is that plaintiff was aware of issues regarding defendant's due diligence. It's agent was aware that the Conditional Commitment was not a guarantee of financing. Defendant and CBC kept plaintiff informed of issues which were affecting the viability of the Project and Mooney testified that plaintiff knew that closing dates could not be realistically discussed until a binding Commitment was issued and that he never "reasonably relied on any potential closing date." Miller testified that he was aware of issues impacting upon the successful completion of the financing for the Project but chose to "ignore" such problems. Finally, there are no written documents which even hint of any particular closing date and upon which plaintiff could rely. There is simply no evidence upon which a reasonable juror could find that plaintiff had a justifiable reason to rely upon any alleged misrepresentation

## Constructive Fraud

The elements required to properly plead a claim of fraudulent representation based on constructive fraud are identical to those required for pleading a case of fraudulent representation based on actual fraud except it is not necessary for a plaintiff to plead and prove that the defendant had knowledge of the falsity of the representation but only that the defendant was ignorant of its truth. Droz v. Trump, at 441; *see also*, Evergreen National Corp., at 496-97 *citing* Droz, *supra*.

Since plaintiff has failed to show any dispute of material fact regarding the other elements, especially as regards reliance, whether or not defendant was ignorant of the truth of the alleged misrepresentations is irrelevant. Plaintiff has still failed to set forth facts sufficient as a matter of law to support a claim of fraud, be it actual or constructive.

## Negligent Misrepresentation

To state a claim for negligent misrepresentation, the plaintiff is required to allege facts that support the following elements: 1) the defendant supplies or omits information in the course of business or because of some pecuniary interest; 2) due to the defendant's failure to exercise reasonable care or competence in obtaining or communicating the information, the information was false; 3) the information was provided intentionally by the defendant to the plaintiff, as a member of a limited group, in a particular business transaction; 4) plaintiff justifiably relied upon the information; and 5) the plaintiff suffered a pecuniary loss. Moses.com, at 1065; Clearly Canadian, at 893; Reding, at 119-20; Dueker, at 669-70; Gurley v. Montgomery First National Bank, 160 S.W.3d. 863, 867 (Mo.App. 2005). Failure to allege and prove any one of the essential elements of negligent misrepresentation is fatal to recovery. Reding, at 1120; Dueker, at 670; Professional Laundry Management Systems, Inc. v. Aquatic Technologies, Inc., 109 S.W.3d. 200, 206 (Mo.App. 2003). Furthermore, in Missouri, a claim for negligent misrepresentation cannot arise from a statement of the defendant's future intent because "it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions. Even if the speaker is merely uncertain regarding the truth of the statement of future intention, the statement is fraudulent rather than negligent because the speaker is ignorant of the statement's truth." Clearly Canadian, at 893 *quoting* Hoag v. McBride & Son Inv. Co., 967 S.W.2d. 157, 174 (Mo.App. 1998); *see also*, Reding, at 1120.

Plaintiff (again) has failed to set forth sufficient evidence to support the required elements of falsity and/or reliance. Plaintiff has failed to set forth any specific facts showing that there is any genuine issue for trial on these elements. Plaintiff has failed to provide material facts showing that they "justifiably relied" upon any alleged misrepresentation regarding closing dates. Furthermore, they have failed to provide material facts showing that these alleged misrepresentations regarding closing dates were nothing more than mere projections or speculations. The defendant has made a showing that there exists no genuine issues of material facts relating to the plaintiff's lack of justifiable reliance or that the defendant failed to exercise reasonable care and in doing so, any statement regarding closing dates was false. Plaintiff has failed to support at least two essential elements of its claim for negligent misrepresentation.

Finally, assuming that the alleged misrepresentations were statements of defendant's intent to close by some future date, such a claim is not viable under Missouri law.

### **Promissory Estoppel**

Under Missouri law, in order to recover on the basis of promissory estoppel, a plaintiff must establish four (4) requisite elements: 1) a promise (which is inconsistent with later actions of the party making the promise); 2) detrimental reliance by the promisee on the promise; 3) promisor could reasonably foresee the precise action the promisee took in reliance; and 4) injustice can only be avoided by enforcement of the promise. Moses.com, at 1061; Kearney Commercial Bank v. Popejoy, 119 S.W.3d. 143, 147 (Mo.App. 2003); Blackburn v. Habitat Development Co., 57 S.W.3d. 378, 387 (Mo.App. 2001); Midwest Energy, Inc. v. Orion Food Systems, Inc., 14 S.W.3d. 154, 158-59 (Mo.App. 2000); Prenger v. Baumhoer, 939 S.W.2d. 23, 26 (Mo.App. 1997). The promise giving rise to the claim for promissory estoppel must be definite and must be made "in a contractual sense."Kearney, at 147; Blackburn, at 387; Prenger, at 26 (citations omitted). Furthermore, in promissory estoppel cases, the focus is on how the promise relates to its ability to provoke reliance rather than just the promise in isolation. Blackburn, at 387; Prenger, at 27 (citations omitted). A promisee seeking to enforce a promise under the doctrine of promissory estoppel bears the burden of demonstrating that his or her reliance upon the promise was reasonable. Kearney, at 147-48; Blackburn, at 387-88 (citations omitted); *see also*, Midwest Energy, at 159 ("All cases agree the essence of the plaintiff's case is justifiable reliance causing damage.").

The doctrine of promissory estoppel is not concerned with fraudulent behavior on the part of the promisor. "As distinguished from fraud, the doctrine of promissory estoppel is not concerned with good faith or bad faith of the promisor in making the promise allegedly relied on; that is irrelevant to the issue of whether an enforceable promise was in fact made." Blackburn, at 388 *quoting* Footwear Unlimited, Inc. v. Katzenberg, 683 S.W.2d. 291, 296 (Mo.App. 1984). The promisee bears the burden of proof and said proof must be by "clear and satisfactory evidence", sometimes referred to as "clear and convincing evidence." Blackburn, at 388 *quoting*

Resnik v. Blue Cross and Blue Shield, 912 S.W.2d. 567, 573 (Mo.App. 1995) and Geisinger v. A&B Farms, Inc., 820 S.W.2d. 96, 99 (Mo.App. 1991).

Promissory estoppel is to be used "with caution, sparingly and only in extreme cases to avoid unjust results." Moses.com, at 1061; Kearney, at 146-47; Blackburn, at 388; Midwest Energy, at 165; Geisinger, at 98. However, "the jury should be allowed to consider a promissory estoppel claim if the plaintiff `can point to evidence which, if believed, would permit a judge or jury to find each of these elements.'" Moses.com, at 1061 *quoting* Midwest Energy, at 159.

Plaintiff asserts that defendant first promised to close the loan by Christmas 2002; then made subsequent promises to close the loan by dates certain. It further contends that based upon these promises, it continued to invest in the Project and to forgo a search for other sources of financing for the Project.

"Promise is a `manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a Commitment has been made.'" Kearney, at 147 *quoting* Prenger, at 26. "Put another way, a promise is an expression of intention by the promisor to `bring about a specified result in the future.'" Kearney, at 147 *quoting* Moore v. Mo.-Neb. Express, Inc., 892 S.W.2d. 696, 703 (Mo.App. 1994). As stated before, the promise must be definite and made in the contractual sense.

Plaintiff has failed to set forth specific facts supporting its contention that defendant had made a "promise" to close the loan on Christmas 2002. Plaintiff has further failed to set forth specific facts showing that defendant "promised" to close the loan by any definite date. The undisputed facts are that plaintiff may have provided information pursuant to CBC's questionnaire but this document was not a contract for the loan between plaintiff and defendant. Furthermore, the Conditional Commitment was nothing more than what it stated: i.e., a document evidencing defendant's attempt to put together a loan package for plaintiff conditioned upon plaintiff performing certain acts such as providing an accurate appraisal. The Conditional Commitment does not contain any language promising that a loan would be definitely made by a date certain. Plaintiff made have wanted a closing on a date certain and may have attempted to pressure

14

defendant into agreeing to one, but its own agent belies the contention that defendant ever promised a date certain for the closing.

Even if the Court were to find that the promise element has been satisfied, the undisputed evidence is that plaintiff had no justifiable reason to rely on such promise(s). Mooney has testified that he was aware of problems with the appraisal, as well as other outside factors negatively affecting defendant's ability to procure financing, and that he apprised plaintiff of these problems. Miller testified, as well as Montel, that the issues pending would significantly impact upon financing the Project. Furthermore, Miller testified, that despite being aware of these issues, he chose to "ignore" them. Plaintiff has failed to set forth sufficient affirmative evidence from which any reasonable juror could find that it reasonably relied on any promise of a date certain for closing.

## **Conversion**

Plaintiff alleges that defendant has improperly retained possession of plaintiff's $60,000.00 "Commitment Fee", and despite demands for its return, has elected to keep the fee. Plaintiff also has brought its conversion claim under Indiana law.

Firstly, plaintiff's claim for conversion is not governed by Indiana law. The fee in question was paid pursuant to the Conditional Commitment agreement which has a Missouri choice-of-law provision. Defendant's Exhibit 1 - Mooney Affidavit and Exhibit D to Mooney Affidavit, ¶25. Furthermore, the Conditional Commitment was drafted in Missouri, signed by defendant in Missouri, the subject funds were wired to defendant in Missouri, and defendant has retained the funds in Missouri. The Court finds that Missouri law applies.

Under Missouri law, conversion is the "unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." Pollock v. Berlin-Wheeler, Inc., 112 S.W.3d 73, 77 (Mo.App. 2003) *quoting* Mertz v. Blockbuster, Inc., 32 S.W.23d 130, 133 (Mo.App. 2000); Dean Machinery Co. v. Union Bank f/k/a Bannister Bank, 106 S.W.3d 510, 522 (Mo.App. 2003); Walker v. Hanke, 992 S.W.2d 925, 930 (Mo.App. 1999). It is a tort against the right of possession rather than against the right of title. Dean Machinery, at 522 *citing* Mertz, at 133. Conversion can be proved in three ways: 1) by tortious

taking; 2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the owner's rights; or 3) by refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper. Dean Machinery, at 522; Estate of Boatwright v. Boatwright, 88 S.W.3d. 500, 506 (Mo.App. 2002); Mertz, at 133; Walker, at 930. Intent to convert may be inferred from the facts and circumstances of the situation. Dean Machinery, at 522; Mertz, at 133.

Here, it is undisputed that plaintiff tendered the subject $60,000.00 pursuant to the terms of the Conditional Commitment agreement. Under the terms of the Conditional Commitment, the $60,000.00 "Commitment Fee" is refunded or credited to the plaintiff at closing. Mooney Affidavit - Exhibit D, ¶5. However, "[**T**]**he Commitment Fee, will be non-refundable in the case of a `Borrower Failure'."** Mooney Affidavit - Exhibit D, ¶5. The Conditional Commitment further defines "Borrower Failure" as follows:

> "For purposes of this Commitment, **"Borrower Failure"** means any of (a) Borrower's termination of this Commitment prior to expiration of the Term without Lender contact and consent, (b) Borrower's failure to close the Transaction, for any reason including without limitation, refusal to Close on financing terms described in Paragraph 8 of this Commitment, as the same may be modified by Borrower and Lender subsequent to the date hereof, c) **[sic]** any failure to close the Transaction based upon any failure by Borrower to fully perform any of its obligations pursuant to this Commitment or any Transaction Document. (d) **[sic]** "Discovery" of falsified, incorrect or misleading information as a result of due process."

Mooney Affidavit - Exhibit D, ¶5.

It is undisputed that CBC and plaintiff understood that the Commitment Fee was non-refundable in the event plaintiff terminated the Conditional Commitment prior to the expiration of its term or upon the discovery of falsified, incorrect or misleading information. Mooney Affidavit and Exhibit C to Mooney Affidavit. It is undisputed that plaintiff terminated the Conditional Commitment prior to the expiration of its term. It is further undisputed that the appraisal contained materially misleading and incorrect information which plaintiff failed to disclose to defendant. Given these findings, no reasonable juror could find that plaintiff has made a submissible case for conversion of the subject Commitment Fee.

16

In light of the Court's findings, no material issues of fact remain in dispute, and defendant is entitled to summary judgment on all claims as contained in the plaintiff's amended complaint.

Dated this __16th__ day of February, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE